UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-00541-AH-(MBK) | Date | March 9, 2026 |
| Title | *Nurlan Gudavasov v. David Marin* | | |

Present: The Honorable **Anne Hwang, United States District Judge**

| Yolanda Skipper | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**  (IN CHAMBERS) ORDER GRANTING *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 2)

Before the Court is an *ex parte* application for a Temporary Restraining Order ("TRO") filed by Petitioner Nurlan Gudavasov ("Petitioner"). Appl., Dkt. No. 2. Respondents Pamela Bondi, Thomas Giles, Todd Lyons, David Marin, and Kristi Noem ("Respondents") opposed. Opp'n, Dkt. No. 7. Petitioner replied. Dkt. No. 9. For the following reasons, the Court **GRANTS** Petitioner's application for a TRO.

## I.   BACKGROUND

Petitioner, a native of Russia, entered Mexico on November 5, 2022. Pet. ¶ 12, Dkt. No. 1. Through a charitable organization, Petitioner applied for political asylum in the United States and was later interviewed at the San Isidro, California port of entry on November 25, 2022. *Id.* Petitioner was served with a Notice to Appear charging him with violations of Section 212(a)(6)(A)(i) of the Immigration and Nationality Act and then paroled into the United States pending his future immigration hearing. *Id.* Petitioner was granted humanitarian parole. *Id.* At that time, Respondents determined that Petitioner was not a flight risk or posed a danger to the community. *Id.* ¶ 41. Petitioner has established ties to the

community, attended every ICE check-in, applied for asylum, and obtained a work permit. *Id.* ¶ 42. Petitioner has no criminal record. *Id.* ¶ 12.

In or about July 2025, Petitioner was re-detained and continues to be detained at the Adelanto ICE Processing Center.[1] *Id.* ¶¶ 3, 12. Petitioner alleges he "saw an immigration judge on July 28, 2025," and was rescheduled for a later date, but that subsequent hearings were rescheduled multiple times. *Id.* ¶ 12.

On February 6, 2026, Petitioner filed a petition for writ of habeas corpus, alleging that his detention violates due process under the Fifth Amendment, the Administrative Procedure Act, and the *Accardi* doctrine for failure to follow agency regulations. *See generally* Pet. On the same day, Petitioner filed the instant application for a TRO, seeking immediate release from custody. *See generally* Appl.

## II.   LEGAL STANDARD

The standards governing a TRO and a preliminary injunction are "substantially identical." *Stuhlbarg International Sales Co. v. John D. Bush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Under *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008), a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." Courts in the Ninth Circuit also employ a "sliding scale" approach, also known as the "serious questions" test, in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

---

[1] Petitioner's Petition and application contain inconsistent statements regarding his detention. In the Petition, Petitioner alleges he was detained during a regularly scheduled check-in with ICE on July 27, 2025, that he was no longer required to participate in ICE check-ins as of December 2023, and that he was detained on a different date, July 24, 2025. Pet ¶¶ 3, 12. In the application, Petitioner alleges he was detained on July 24, 2025, and that "[o]n December 4, 2024, Respondents suddenly revoked Petitioner's parole, arrested him and placed him in § 1229a removal proceedings." Appl. at 5–6.

Courts in the Ninth Circuit also employ a "sliding scale" approach, also known as the "serious questions" test, in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, "'serious questions going to the merits" and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* Serious questions are those that "cannot be resolved one way or the other at the hearing on the injunction because they require more deliberative investigation. Thus, parties do not show serious questions when they raise a merely plausible claim." *Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024, 1031 (9th Cir. 2024) (internal quotation marks and citations omitted).

## III. DISCUSSION

### A. Likelihood of Success on the Merits

Among other claims, Petitioner alleges a violation of his Fifth Amendment procedural due process rights for the revocation of his parole without notice and a meaningful opportunity to respond. Pet. ¶ 44. The Supreme Court established that individuals possess a protected liberty interest against re-incarceration following even a conditional release from imprisonment. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Here, Petitioner was paroled into the United States following initial detention. Pet. ¶ 2. Petitioner has since complied with all conditions of release and has no criminal history. *Id.* ¶¶ 2, 12. Under *Morrissey*, Petitioner has a protected liberty interest in remaining out of custody, and the July 2025 re-detention deprived Petitioner of this interest. Respondents have provided no basis for the re-detention, such as a violation of a condition of release, posing a danger to the community, presenting a flight risk, or any other changed circumstances.

To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (3) the countervailing government interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). On the first factor, as discussed above, the Court finds that Petitioner has a substantial private interest in his continued liberty, as "[f]reedom from bodily restraint has always been at the core of the liberty

protected by the Due Process Clause." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). On the second factor, the Court finds that there is significant risk of erroneous deprivation given that Petitioner did not receive a pre-detention hearing to determine whether there is valid basis for detention, and considering that Petitioner asserts he has complied with all terms of his parole and has no criminal record. *See, e.g.*, *Perez Bueno v. Janecka*, 2026 WL 309934, at *3 (C.D. Cal. Feb. 5, 2026) ("The Court finds that the risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker to determine whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community.") (citation omitted); *Cruz v. Lyons*, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025) (finding a high risk of erroneous deprivation without a pre-detention hearing where the petitioner was granted parole, complied with the terms of her parole, and had no criminal record). On the third factor, the Court does not find any countervailing governmental interest that outweighs Petitioner's interest in a pre-deprivation hearing. *See, e.g.*, *Hasratyan v. Bondi et al.*, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026) ("As many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing.") (citation modified). Applying the *Mathews v. Eldridge* factors to the circumstance here, the Court concludes that a pre-deprivation hearing should have been provided to Petitioner.

Respondents argue that Petitioner is entitled to at most a bond hearing, but not immediate release. Opp'n at 3. Respondents assert that Petitioner, through counsel, requested but then withdrew a request for a bond hearing in immigration court before filing the instant action in federal court. *Id.* at 2. Respondents' only argument appears to be that Petitioner's ability or opportunity to have a post-detention bond hearing is sufficient process.[2] However, Respondents do not dispute that Petitioner did not receive a pre-detention hearing.

---

[2] It is unclear from the record whether Petitioner received a post-detention hearing. Petitioner claims that he "saw an immigration judge on July 28, 2025," but the immigration judge allegedly could not explain why Petitioner was being detained, and that a hearing was rescheduled multiple times and has not been held. Appl. at 5. In any event, Respondents do not respond to Petitioner's argument that any post-detention hearing was itself procedurally deficient and did not reach the merits of whether Petitioner poses a flight risk or danger to the community.

"While the Ninth Circuit concluded that a post-detention bond hearing generally satisfies due process for the detention of a noncitizen pending removal proceedings pursuant to 8 U.S.C. § 1226(a), it did not foreclose 'as-applied due process challenges to § 1226(a).'" *Perez Bueno*, 2026 WL 309934, at *3 (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1214 (9th Cir. 2022)). In *Perez Bueno*, considering the specific context where a petitioner "was released from civil immigration detention after his initial apprehension and is now re-detained," the court determined that due process requires notice and a pre-deprivation hearing before detention, and that the proper remedy for a failure to provide such process is immediate release from detention. *Id.* at *3–4. Other courts have similarly concluded that a post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing. *See, e.g.*, *Domingo v. Kaiser*, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.") (citation omitted); *Hasratyan*, 2026 WL 288909, at *4 (concluding that where a petitioner received a procedurally deficient post-detention bond hearing, "the post-detention process Petitioner received and will receive is no substitute for the pre-detention process she was owed"); *but see Aguilar v. Semaia*, 2026 WL 166906, at *5 (C.D. Cal. Jan. 16, 2026) (concluding that although the petitioner should have received a pre-deprivation hearing, the post-deprivation bond hearing afforded the petitioner adequate procedural safeguards because the petitioner challenged the immigration judge's *substantive* decision to deny bond). The Court finds the reasoning in these cases, as well as that in the cases *Fernandez v. Semaia*, 2026 WL 136229 (C.D. Cal. Jan. 13, 2026), and *Pinchi v. Noem*, 792 F. Supp. 3d 1025 (N.D. Cal. 2025), to be persuasive and adopts the reasoning set forth in those cases in concluding that Petitioner has raised at least serious questions going to the merits of his procedural due process claim.[3]

### B. Irreparable Harm

"It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation modified); *see also Hernandez v. Sessions*, 872 F.3d

---

[3] In light of the Court's ruling that Petitioner is likely to succeed on the procedural due process claim, the Court does not reach Petitioner's other claims.

976, 995, 1000 (9th Cir. 2017) (describing the "irreparable harms imposed on anyone subject to immigration detention"). Petitioner, who remains in immigration detention, has therefore demonstrated irreparable harm in the absence of injunctive relief.

### C. Balance of Equities and Public Interest

The remaining two *Winter* factors, the balance of equities and public interest, merge when the government is the opposing party. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (citation omitted). Further, a party "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). The balance of equities and public interest therefore tip in Petitioner's favor.

### D. Security Bond

The security bond requirement of Federal Rule of Civil Procedure 65(c) is waived. The Court has "discretion as to the amount of security required, if any," and "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioner's Application for a TRO. Respondents are ORDERED to immediately release Petitioner from custody under the same conditions previously imposed, without further restrictions, and are ENJOINED from re-detaining Petitioner without a pre-deprivation hearing before a neutral decisionmaker.

Respondents are ORDERED to show cause, in writing, as to why the Court should not issue a preliminary injunction in this case by March 16, 2026. Petitioner may file an optional response or a voluntary dismissal by March 18, 2026. The Court sets a hearing for the preliminary injunction on March 23, 2026, at 1:30 p.m.

**IT IS SO ORDERED.**